UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAWN SARRACH,

                    Plaintiff,

v.                                                              Case No.  8:12-cv-00784-T-27AEP

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

                    Defendant.
_____/

## REPORT AND RECOMMENDATION

          Plaintiff Dawn Sarrach seeks judicial review of the denial of her claim for a period of

disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  As

the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and

failed to employ the proper legal standards, the Court recommends that the Commissioner's

decision be reversed and remanded.

## I.

### A.     Procedural Background

          Plaintiff filed an application for a period of disability, DIB, and SSI on April 22, 2008,

alleging a disability beginning on March 1, 2008.[2]   (Tr. 21, 158-74, 211, 227.)   The

_____

          [1]  On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of
Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as
Defendant in this action.  *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

          [2]  Plaintiff would not be entitled to SSI benefits prior to April 22, 2008.  Plaintiff filed
her application for SSI benefits on April 22, 2008.  (Tr. 158-66.)  But Plaintiff alleges an onset

Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 76-85, 89-96.) Plaintiff then requested an administrative hearing. (Tr. 110-11.) On April 13, 2010, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff appeared, was represented by counsel, and testified, and an impartial vocational expert ("VE") also appeared telephonically for the hearing. (Tr. 36-71.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 16-35.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-5.) Plaintiff then timely filed a complaint with this Court. (Dkt. No. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born on September 25, 1961, claims disability beginning on March 1, 2008. (Tr. 27, 41, 158, 211, 227.) Plaintiff has a high school education. (Tr. 27, 42, 217-18.) Plaintiff also attended vocational school for medical assisting. (Tr. 42, 217-18.) Her past relevant work experience includes work as a medical assistant. (Tr. 43-44, 212, 220, 251-52.) Plaintiff alleged disability due to fibromyalgia, arthritis in the lower back, depression, insomnia, anxiety disorder, and bipolar disorder. (Tr. 211, 272.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and

_____

of disability on March 1, 2008, which is prior to her application for SSI benefits. (Tr. 158, 211, 227.) SSI benefits are not payable for any month prior to a claimant's application for SSI benefits. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335. Therefore, if Plaintiff was entitled to SSI benefits, she would not be entitled to them in March 2008, the month prior to the date that she filed her application for SSI benefits, which was in April 2008.

lumbar spine; fibromyalgia; obesity; and affective/mood disorder.   (Tr. 21, Finding 3.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 21, Finding 4.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a limited range of light work, which the ALJ recognized to also include a limited range of sedentary work.  (Tr. 22, Finding 5.)  Specifically and as part of Plaintiff's RFC, the ALJ found that Plaintiff: could work sitting and standing, or alternating between the two in a regular eight-hour work day; could not repetitively bend, stoop, crawl, twist, or drive; would be unable to perform complex job duties but could perform simple, routine, repetitive tasks in the unskilled and lower-end semi-skilled occupational base.  (Tr. 22, Finding 5.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and functionally limiting effects of her symptoms were inconsistent with the evidence of record and could not be fully credited.  (Tr. 23.)

Considering Plaintiff's noted impairments and the assessment of the VE, however, the ALJ determined that Plaintiff could not perform her past relevant work. (Tr. 27, Finding 6.)  The VE testified that Plaintiff could perform other jobs existing in the national economy.  (Tr. 27-28, 64-68.)  Because the ALJ found that Plaintiff nevertheless presented additional limitations, the ALJ relied on the VE's assessment to determine the extent to which these limitations eroded

3

Plaintiff's ability to perform unskilled and lower-end semi-skilled light occupations. (Tr. 28-29.) Given Plaintiff's age, education, work experience, and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an appointment clerk, parking booth attendant, toll collector, gate guard, bench assembler, and photo finisher. (Tr. 28, 64-68.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. (Tr. 29, Finding 11.)

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must

4

determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and considering the RFC assessment, whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 1035 (2005) (citation omitted).  The Commissioner must apply the correct law and demonstrate that the Commissioner has done so.  While the court reviews the

Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971).[3] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff challenges the ALJ's decision on three grounds:

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

(1)     The ALJ erred by failing to complete a Psychiatric Review Technique Form or like analysis when the ALJ determined that Plaintiff suffered from the severe impairment of an affective/mood disorder;

(2)     The ALJ erred by failing to provide a function-by-function analysis of Plaintiff's RFC; and

(3)     The ALJ erred by relying on the VE's testimony after the ALJ posed an improper hypothetical to the VE, which did not adequately reflect Plaintiff's limitations.

For the reasons that follow, the Court recommends that the case be reversed and remanded because the ALJ failed to apply the correct legal standards and his decision is not supported by substantial evidence.

**A.      Whether the ALJ properly evaluated Plaintiff's severe mental impairment when determining Plaintiff's RFC.**

Plaintiff first argues that the ALJ erred by failing to complete a Psychiatric Review Technique Form ("PRTF") or like analysis when the ALJ determined that Plaintiff had an affective/mood disorder as a severe impairment. (Dkt. No. 17 at 10-11.) As part of Plaintiff's RFC, the ALJ found that Plaintiff "would be unable to do complex job duties but could perform simple routine repetitive tasks in the unskilled and lower end semi-skilled occupational base." (Tr. 22.)  The problem, according to Plaintiff, is that the ALJ did not provide any analysis regarding his determination of Plaintiff's mental impairments. (Dkt. No. 17 at 10.)  More specifically, Plaintiff avers that the ALJ did not comply with the Regulations and the Eleventh

Circuit case law, which requires the ALJ to attach to his decision a PRTF or include in his findings and conclusions the PRTF's mode of analysis. (Dkt. No. 17 at 11.) From this error, Plaintiff alleges that it is impossible to know whether the ALJ's RFC determination regarding Plaintiff's mental impairment is supported by substantial evidence. (Dkt. No. 17 at 11.) The Court agrees.

### 1. Step Two

At step two of the sequential analysis, a claimant must show that she suffers from an impairment or combination of impairments that significantly limits her physical and mental ability to do basic work activities for a consecutive twelve-month period, namely: walking; standing; sitting; pushing; reaching; seeing; hearing; speaking; understanding and carrying out of simple instructions; use of judgment; and responding appropriately in the workplace. *See* 20 C.F.R. §§ 404.1520, 404.1521, 416.920, 416.921. The finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy the requirements of step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (emphasis added and citations omitted); *Lawson v. Astrue*, No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794, at *6 (M.D. Fla. Nov. 2, 2009); *see also Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 825 (11th Cir. 2010) (per curiam) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").[4] A

---

[4] By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. *See Yuckert*, 482 U.S. at 153-154; *Augusto v. Comm'r of Soc. Sec.*, No. 6:06-cv-1889-Orl-DAB, 2008 WL 186541, at *5 (M.D. Fla. Jan. 18, 2008) ("The 'severe' impairment threshold of step two is a de minimis hurdle . . . employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a

claimant's impairment will be considered nonsevere only if it is a slight abnormality that has such a minimal effect on the claimant that it would not be expected to interfere with the claimant's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).[5] The ALJ must then consider the combined effects of all impairments in evaluating disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam) (citation omitted); *see id.* (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)) ("[I]t is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments caused the claimant to be disabled.").

---

medical standpoint." (quoting *Lane v. Astrue*, No. 3:06-CV-445, 2008 WL 53706, at *7 (E.D. Tenn. Jan. 3, 2008))).

[5] Further, according to Social Security Ruling 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also McConnell v. Astrue*, No. 1:09-cv-00063-MP-WCS, 2009 WL 4405477, at *3 (N.D. Fla. Dec. 2, 2009) ("Even if there is error at step 2 . . . a remand is not needed if the error is harmless because the ALJ considered the limiting effects of the impairment at each succeeding step, along with other impairments." (citations omitted)).

9

Additionally, when evaluating the severity of a mental impairment at each level of the administrative review process, the adjudicator must follow "a special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, pertinent symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment(s). *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). Second, the adjudicator must evaluate the degree of functional limitation resulting from the impairment(s)[6], which requires the adjudicator to consider all relevant evidence including "all relevant and available clinical signs and laboratory findings, the effects of [a claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id.* §§ 404.1520a(c)(1), 416.920a(c)(1). The four broad functional areas to which a rate[7] will be assigned by the adjudicator to articulate the degree of limitation are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). Once the rates have been assigned to

---

[6]  The degree of functional limitation means "the extent to which [a claimant's] impairment(s) interferes with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). Under this analysis, the adjudicator will consider factors such as "the quality and level of [a claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [a claimant] require[s], and the settings in which [a claimant is] able to function." *Id.* Further, assessing the severity of a claimant's mental impairment(s) requires the adjudicator "to obtain a longitudinal picture" of such limitation(s). *Id.* §§ 404.1520a(c)(1), 416.920a(c)(1). By its own terms, the regulation requires the adjudicator to determine severity based on viewing a mental impairment(s) over time.

[7]  In the first three functional areas, the scale includes the following degrees: none; mild; moderate; marked; and extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). In the last functional area, episodes of decompensation, the scale includes the following degrees: none; one or two; three; and four or more. *Id.*

the four functional areas based on the functional limitations from a claimant's impairment(s), the adjudicator will determine the severity of the impairment(s). *Id.* §§ 404.1520a(d), 416.920a(d). Of import, if the rate given to the first three functional areas is either none or mild, and the rate given to the fourth area is none, generally, those findings support the conclusion that an impairment(s) is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ did everything required of him at step two of the sequential evaluation process regarding Plaintiff's mental impairments. The ALJ found that Plaintiff's affective/mood disorder was a severe impairment. (Tr. 21.) From the ALJ's decision, it is clear that the ALJ considered Plaintiff's treatment history, medications, and daily activities to determine that Plaintiff's affective/mood disorder was a severe impairment. (Tr. 22-27.) For example, the ALJ considered treating psychologist Dr. Lowery's initial evaluation of Plaintiff, whereby Dr. Lowery diagnosed Plaintiff with bipolar I disorder, mixed state, and noted that Plaintiff's mental status was remarkable for depressed mood, constricted affect, and fair insight/judgment. (Tr. 25, 368-73.) The ALJ likewise considered the two State agency physicians' opinions of record to which the ALJ accorded some weight, Drs. Foster and Hamlin, who collectively found no restrictions in Plaintiff's daily activities, no more than *moderate* limitations in Plaintiff's social functioning, no more than mild limitations in Plaintiff's ability to maintain concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 22, 26-27, 384, 495.) Plaintiff

understandably does not appear to dispute the ALJ's finding that her affective/mood disorder was a severe impairment. Therefore, with regard to step two, the ALJ did not err.

### 2. Step Three

The Regulations provide that once a mental impairment is determined to be severe, the ALJ must then assess whether the impairment meets or medically equals a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). The Listing of Impairments under the Social Security Act names impairments that are considered severe enough to prevent a claimant from doing any gainful activity. *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). In order to "meet" a Listing, a claimant "must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1525(a)–(d)). In order to "equal" a Listing, "the medical findings must be at least equal in severity and duration to the listed findings." *Id.* (citing 20 C.F.R. § 404.1526(a) (internal quotations omitted)).

The ALJ likewise did everything required of him at step three of the sequential evaluation process regarding Plaintiff's mental impairments. Specifically, the ALJ concluded that "[c]onsideration was given to section 12.04 dealing with mental disorder, . . . [h]owever, the findings in evidence do not approach the level of severity set forth in this or any other listing. No treating or examining physician reported findings of listing level severity." (Tr. 22.) Once again, among other things, the ALJ's decision at step three is further supported by the opinions of Drs. Foster and Hamlin, who both opined in their respective PRTFs, that Plaintiff did not meet a 12.04 Listing for Affective Disorders, and the ALJ properly gave these opinions some weight because

they were consistent with the weight of the evidence in the record.  (Tr. 22, 26-27, 374-87, 485-98.)  Moreover, the Eleventh Circuit has clearly established that the ALJ is not required to go into any further detail than he did.  *See Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  This Circuit does not require the ALJ to mechanically recite the evidence leading to his determination; in fact, there may even be an implied finding that a claimant does not meet a listing.  *Id.*  In the present case, there was an *express* finding that Plaintiff did not meet a listing.  Similarly, the ALJ stated that he considered the combined effects of Plaintiff's impairments, which was enough to discharge the ALJ's duty at this step.  (Tr. 21, 27); *see Rolack v. Astrue*, No. 8:07-cv-435-T-26EAJ, 2008 WL 1925092, at *3 (M.D. Fla. Apr. 29, 2008) (finding that an ALJ's statement providing that the ALJ considered the effect of a claimant's combined impairments, was sufficient to discharge the Commissioner's obligation to consider impairments in combination (citing *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986))).  As a result, the ALJ did not err at step three of his analysis.  The error instead lies in the ALJ's mental RFC analysis.

### 3.  Mental RFC Analysis

If a mental impairment is determined to be severe but does not meet a Listing, the Regulations instruct that the ALJ must then evaluate a claimant's RFC.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).  Further, the Regulations require the ALJ to document the application of the PRTF in his decision.  *Id.* §§ 404.1520a(e), 416.920a(e).  More specifically, the ALJ's decision, according to the Regulations, "must show significant history, including examination and laboratory findings, and the functional limitations that were considered in

13

reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4). Indeed, the mental RFC analysis at steps four and five "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." S.S.R. 96-8p, 1996 WL 374184, at *4.

Plaintiff's ultimate argument as to this issue is that the ALJ erred by not evaluating Plaintiff's mental impairments by using a PRTF and attaching it to his decision or by failing to incorporate the PRTF's analysis in his decision. (Dkt. No. 17 at 11.) In support of this assertion, Plaintiff cites to this Circuit's decision in *Moore v. Barnhart*, where the court reversed and remanded the case because "[t]he ALJ failed to even analyze or document Moore['s] condition in two of the PRTF's functional areas: social functioning and prior episodes of decompensation. Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to Moore's RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless." 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam). The Court finds the analysis in *Moore v. Barnhart* persuasive in the instant case.

This case should be reversed and remanded because the ALJ failed to comply with the Regulations, which require the ALJ's decision to include the special technique analysis. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). The Commissioner even seems to hint at conceding such a point. (*See* Dkt. No. 18 at 8-9). Namely, the ALJ did not articulate whether he found Plaintiff

to be moderately limited in social functioning[8], so the Court is unable to determine whether the

ALJ committed harmless error.  *See Moore*, 405 F.3d at 1214.  While the ALJ spent a portion of

his decision discussing Plaintiff's limitations in the area of daily living and arguably in the area

of concentration, persistence, and pace ("CPP")[9], the ALJ failed to sufficiently articulate his

findings in a similar fashion as to the area of social functioning.  To be sure, the ALJ discussed

the treatment notes from Plaintiff's treating psychologist Dr. Lowery, who diagnosed Plaintiff

with bipolar disorder at the initial evaluation after Plaintiff complained of racing thoughts, not

wanting to leave the house, and not wanting to visit her children.  (Tr. 25, 368-73.)  As the ALJ

noted, subsequent treatment notes from Dr. Lowery indicated that Plaintiff's medication was

effective at controlling her depression and anxiety.  (Tr. 25, 396-99, 566-74.)  And even though

a third-party function report by Plaintiff's husband indicated that Plaintiff was unable to manage

funds due to her forgetfulness and would need instructions repeated, the same report also noted

that Plaintiff was able to complete her activities of daily living, use public transportation, shop,

read, and watch television.  (Tr. 25, 295-302.)  Furthermore, the ALJ found that Plaintiff's

various forms of treatment and/or medications were routine or conservative in nature and were

successful in controlling Plaintiff's symptoms.  (Tr. 26.)  As a result, the ALJ found Plaintiff only

---

[8]  Social functioning encompasses the capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  20 C.F.R. pt. 404, subpart P, app. 1, § 12.00(C)(2).  In work situations, social functioning may refer to interactions with the public, responding appropriately to persons in authority, or cooperative behaviors with coworkers.  *Id.*

[9]  CCP refers to the ability to sustain focused attention and concentration in work settings for an adequate amount of time to permit timely and appropriate completion of tasks. 20 C.F.R. pt. 404, subpart P, app. 1, § 12.00(C)(3).

partially credible regarding her subjective complaints of pain and other symptoms, and found that Plaintiff's credible allegations regarding her mental impairments were sufficiently addressed in the RFC by including a restriction to simple, routine, repetitive tasks in the unskilled and lower-end semi-skilled occupational base.  (Tr. 22, 26.)

But notably absent from the ALJ's decision is the analysis of Plaintiff's limitations in social functioning.  This is especially problematic in this case because the two State agency physicians' opinions contained in their respective PRTFs, the opinions of Drs. Foster and Hamlin, differ as to Plaintiff's limitations in social functioning.  (Tr. 374-87, 485-98.)  This is compounded by the fact that the ALJ makes a general assertion that the State agency physicians' opinions on record support a finding of non-disability, and said opinions "do deserve some weight, particularly where such opinions are supported by the record as a whole."  (Tr. 26-27.) Thus, the ALJ fails to reconcile the differing opinions or to otherwise articulate if Plaintiff is limited at all in social functioning.

To illustrate, Dr. Foster's PRTF noted mild difficulties in social functioning (Tr. 384), and Dr. Foster failed to find any examples of current (as of July 5, 2008), severe functional limitations from a mental standpoint other than noting the presence of depression (Tr. 386).  On the other hand, Dr. Hamlin's PRTF noted *moderate* difficulties in social functioning (Tr. 495), and Dr. Hamlin's summary of the record evidence regarding Plaintiff's mental impairments up to that point (November 4, 2008), concluded by stating that the findings suggested moderate limitations in social functioning and it referred to the mental RFC completed by Dr. Hamlin (Tr. 497).  Indeed, the ALJ found that Plaintiff had a severe mental impairment, which would seem

16

to indicate that the ALJ adopted at least a portion of Dr. Hamlin's opinion contained in his PRTF. (Tr. 21.)  Even more troubling was the ALJ's failure to address Dr. Hamlin's mental RFC assessment, which noted that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods (making the ALJ's failure to address CPP arguable), to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting.  (Tr. 516-17.)  Overall, Dr. Hamlin opined that Plaintiff had the capacity to follow work-like procedures and instructions, Plaintiff maintained adequate attention and concentration to sustain focus in completing selected simple, routine tasks, Plaintiff appropriately interacted with others in a structured setting, and although Plaintiff had some decreased adaptability, adaptability was not compromised, and Plaintiff could nonetheless adjust to a work environment.  (Tr. 518.)

Even though the ALJ need not cite to every piece of evidence, a reviewing court must be able to determine from the ALJ's decision whether the ALJ relied on substantial evidence, which the Court is unable to do in this case.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . .").  Similar to the finding in *Moore v. Barnhart*, the ALJ in the instant case failed to even analyze or document Plaintiff's mental limitations in at least the area of social functioning.  Just as the court in *Moore* was unable to evaluate whether the ALJ's error was harmless, here too, the Court is unable to evaluate whether the ALJ's error was harmless because the Court cannot discern what the ALJ's findings were with respect to certain areas of Plaintiff's mental functioning especially since the ALJ never reconciled the opinions of

17

Drs. Foster and Hamlin. *See Volley v. Astrue*, No. 1:07-CV-0138-AJB, 2008 WL 822192, at *19 (N.D. Ga. Mar. 24, 2008) (remanding the case back to the Commissioner to determine whether the ALJ's failure to apply the special technique analysis was harmless error because the ALJ failed to reconcile differing State agency opinions as to the claimant's limitations in CPP (citing *Moore*, 405 F.3d at 1214)).  In other words, the Court cannot conclude given this record that the ALJ's RFC finding, which limits Plaintiff to simple, routine, repetitive tasks, is supported by substantial evidence because the ALJ failed to properly articulate and justify his finding.  As such, remand—not reversal—is appropriate in this instance. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (reversing the Commissioner's decision and immediately awarding benefits to a claimant is appropriate when the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence established disability without a doubt (citations omitted)).  Therefore, upon remand, the ALJ must reconsider the opinions of Drs. Foster and Hamlin, and Plaintiff's mental impairments should be evaluated in accordance with the procedures set forth in the Regulations (namely, 20 C.F.R. §§ 404.1520a, 416.920a) and as discussed by the Eleventh Circuit in *Moore*.

  **B.**  **Whether the ALJ properly performed a function-by-function analysis in determining Plaintiff's RFC.**

  Plaintiff also challenges the ALJ's decision based on his RFC determination.  (Dkt. No. 17 at 12-13.)  According to Plaintiff, the ALJ erred because he failed to conduct a function-by-function analysis of Plaintiff's RFC.  (Dkt. No. 17 at 12.)  Particularly, Plaintiff contends that the ALJ did not adequately define the finding that Plaintiff "can work sitting and standing, or

alternating between the two in a regular eight-hour workday" because the ALJ did not refer to a specific amount of time that Plaintiff could sit or stand, and similarly, the ALJ did not indicate the amount of weight that Plaintiff could lift. (Dkt. No. 17 at 13.) The Court finds that Plaintiff's contentions regarding a physical function-by-function analysis lack merit. However, and although not an issue raised by Plaintiff, since the Court cannot determine whether the ALJ's decision is based on substantial evidence because the ALJ's mental RFC determination is unclear, remand is appropriate.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is defined as the most a claimant "can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on *all* of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. *Id.* §§ 404.1545(a)(1) & (3), 416.945(a)(1) & (3) (emphasis added). Therefore, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See id.* §§ 404.1545(a)(3), 416.945(a)(3) (stating that all of the record evidence is considered in the RFC assessment). Further, while the ALJ should consider doctors' opinions regarding a claimant's ability to work in forming the RFC, the doctors' opinions are distinct from the RFC assessment. *See* 20 C.F.R. §§ 404.1513(b) & (c), 404.1527, 404.1545, 416.913(b) & (c), 416.927, 416.945 (explaining that

19

a claimant's RFC is the adjudicator's ultimate finding based on all evidence in the record, including doctors' opinions).

Moreover, in assessing physical (and mental) abilities, the Regulations require that the ALJ "*first* assess the nature and extent of [a claimant's] physical limitations and then determine [a claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b), 416.945(b) (emphasis added).  The Social Security Rulings make clear that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.[10]  Only after that may [the] RFC be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy."  S.S.R. 96-8p, 1996 WL 374184, at *1.  Even though Social Security Rulings are only binding on the Social Security Administration and not on the courts, the Court nonetheless finds the instruction telling.  *See* 20 C.F.R. § 402.35 (explaining that the Rulings are binding on all parts of the Social Security Administration because the Rulings represent precedent final opinions and order and statements of policy and interpretations that have been adopted).

In this case, the ALJ adequately assessed Plaintiff's physical abilities before determining Plaintiff's RFC.  First, the ALJ found that Plaintiff had the RFC to perform a limited range of

---

[10]  The functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945 include physical abilities (sitting, standing, walking, etc.), mental abilities (understanding, remembering, carrying out instructions, etc.) and other abilities (skin impairment, epilepsy, impairment of vision, etc.) that are affected by a claimant's impairments.

light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).[11]  (Tr. 22.)  The ALJ added that

Plaintiff "can work sitting and standing, or alternating between the two in a regular eight-hour

workday. . . . She would have non-exertional limitations to include no repetitive bending,

stooping, crawling[,] twisting, or driving.  Furthermore, she would be unable to do complex job

duties but could perform simple[,] routine[,] repetitive tasks in the unskilled and lower end semi-

skilled occupational base."  (Tr. 22.)  In the two hypothetical questions posed to the VE (one

based on a restricted range of light work and the other based on a restricted range of sedentary

work), after telling the VE to assume a person with Plaintiff's age, education, and experience, the

ALJ asked if other jobs existed that allowed for a "sit and stand option."  (Tr. 62-64.)  The VE

clarified the ALJ's question by asking whether the sit and stand option meant an at-will option.

(Tr. 64.)  The ALJ responded that the sit and stand option was not at-will, but rather, was in thirty

minute increments.  (Tr. 64.)

    Plaintiff takes issue with the fact that the ALJ failed to make clear the amount of time

Plaintiff was capable of standing and sitting, the specific amount of time that Plaintiff could either

stand or sit until alternating positions, and the amount of weight Plaintiff could lift before making

the RFC determination.  (Dkt. No. 17 at 13.)  However, the hypothetical posed to the VE clearly

---

    [11]  Light work is defined as involving "lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight
lifted may be very little, a job is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some pushing and pulling of arm or
leg controls.  To be considered capable of performing a full or wide range of light work, you
must have the ability to do substantially all of these activities.  If someone can do light work,
we determine that he or she can also do sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§
404.1567(b), 416.967(b).

indicated the amount of weight Plaintiff could lift by including light or sedentary work, and the ALJ specified that the sit and stand option was permitted in thirty-minute increments, and Plaintiff was further limited in the ability to repetitively bend, stoop, climb, crawl, twist, and drive. (Tr. 62-64.)  While the ALJ could have been more specific by addressing each of the work-related abilities on a function-by-function basis in his RFC finding, the Court finds that the ALJ sufficiently analyzed Plaintiff's physical abilities in his RFC analysis by discussing all of the evidence of record, which supported his finding that Plaintiff could perform a restricted range of light or sedentary work.  *See Freeman v. Barnhart*, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007) (per curiam) (finding that the ALJ made an adequate function-by-function analysis before forming the claimant's RFC because after considering all of the evidence, the ALJ determined that the claimant had no functional limitations and the hypothetical posed to the VE was limited to light exertional activity, which implicitly included the limitations in sitting, standing, and walking).

Substantial evidence supports the ALJ's physical ability RFC assessment.  For one, the ALJ gave some weight to the State agency opinions which were consistent with each other and the weight of the evidence of record in finding that Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently, and standing or walking for six hours in an eight-hour work day, and sitting for six hours in an eight-hour work day, which is consistent with the ability to perform light work.  (Tr. 26-27, 388-95, 527-34.)  In fact, the ALJ noted that none of Plaintiff's treating or examining physicians restricted Plaintiff's abilities greater than what the ALJ found. (Tr. 26, 338-64, 367-73, 396-99, 499-501, 520-26, 535-620.)  The ALJ also discussed the medical tests of record, which also revealed that Plaintiff was not as physically limited as she alleged.  For

example, January 2008 x-rays of Plaintiff's lumbar spine revealed that there were degenerative changes (most marked at L4-5 and L5-S1), but the alignment of the lumbar spine was intact, and there was no evidence of acute pathology, fracture, spondylolysis, or spondylolisthesis. (Tr. 364.) A December 2009 MRI of the lumbar spine showed advanced disc desiccation with small annular tear at L4-L5, but no nerve root compromise at L2-L3 level, and overall, no frank disc herniation at any level.  (Tr. 559.)  The ALJ's RFC finding is also supported by treating physician Dr. Trajkovic's examination, which noted that Plaintiff's muscle strength was 5/5 in all extremities and sensation was intact, and Dr. Goss's examination, which noted that Plaintiff had a full range of motion in the bilateral shoulders, elbows, wrists, hands, knees, hips, ankles, and feet.  (Tr. 24, 358-59, 541-46.)

By contrast, the ALJ erred in evaluating Plaintiff's mental abilities before determining Plaintiff's RFC.  As previously discussed, the ALJ failed to reconcile the two differing State agency physicians' opinions regarding Plaintiff's mental abilities, and failed to adequately articulate his findings as to Plaintiff's mental functioning in each of the four, broad areas outlined in the Regulations.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  That is, the ALJ failed to perform a function-by-function analysis of Plaintiff's mental abilities before determining Plaintiff's RFC, especially in the area of social functioning to which Dr. Hamlin opined Plaintiff had moderate limitations, so it is unclear whether the RFC accounts for such social limitations, if in fact, the ALJ found any such social limitations at all.  So when the ALJ posed the hypothetical questions to the VE including the limitation that Plaintiff "could perform simple[,] routine[,] repetitive tasks in the unskilled and lower end semi-skilled occupational base[,]" it is unclear whether these

hypothetical questions adequately accounted for any social limitations that Plaintiff may have. (Tr. 22.)  As a result, the Court cannot determine whether the ALJ's mental RFC determination, which included a restriction to simple, routine, repetitive tasks, accounts for such social limitations.  *See Haynes v. Astrue*, No. 3:11-cv-373-J-TEM, 2012 WL 4466478, at *8 (M.D. Fla. Sept. 27, 2012) (finding the ALJ's mental RFC deficient because a restriction to a low stress job says nothing about moderate difficulties in CPP and fails to address moderate difficulties in social functioning).  Accordingly, upon remand, the ALJ must re-evaluate Plaintiff's mental RFC by first assessing Plaintiff's mental abilities in each of the four, broad categories found in the Regulations.

**C.      Whether the ALJ posed a proper hypothetical to the VE and then properly relied on the VE's testimony to find Plaintiff not disabled.**

Lastly, Plaintiff contends that the ALJ improperly relied on the VE's testimony after failing to pose a hypothetical question to the VE that adequately reflected Plaintiff's mental limitations.  (Dkt. No. 17 at 13-16.)  The hypothetical posed to the VE included the following mental limitations: Plaintiff was precluded from complex job duties; and Plaintiff could perform simple, routine, and repetitive tasks in the unskilled and lower-end semi-skilled occupational base.  (Tr. 22, 62-63.)  Plaintiff asserts that it is unclear whether a limitation to unskilled work or lower-end of the semi-skilled occupational base would account for all of Plaintiff's mental limitations, the ALJ failed to adequately define Plaintiff's mental limitations to the VE, and as such, the VE's testimony should be rejected because it did not fully and accurately reflect

Plaintiff's functional abilities.  (Dkt. No. 17 at 14-16.)  Once again, as established above, the Court agrees.

At step five of the sequential analysis, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work, a finding of not disabled is warranted.  *Id.*  Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted.  *Id.*  At this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in the national economy, which given the claimant's impairments, the claimant can perform.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Typically, where the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam) (citations omitted).  The testimony of the VE is crucial to the ALJ in reaching a determination at step five of the sequential evaluation process because the VE is an expert with respect to the kinds of jobs an individual can perform based on his or her capacity and impairments.  *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

It is well settled that the ALJ must pose an accurate hypothetical that takes into account all of the claimant's impairments in order to be supported by substantial evidence.  *Jones v. Comm'r of Soc. Sec.*, 423 Fed. Appx. 936, 938 (11th Cir. 2011) (per curiam).  Importantly, the

ALJ's hypothetical posed to a VE must comprehensively describe the claimant's limitations. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) (per curiam).  Of course, the ALJ is not required to include limitations found not credible or inconsistent with the medical evidence and submits to the VE only those limitations supported by the record evidence.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996); *McSwain v. Bowen*, 814 F.2d 617, 620, 620 n.1 (11th Cir. 1987) (per curiam); *cf. Pendley*, 767 F.2d at 1562-63 (stating that the ALJ posed an incomplete hypothetical question to the VE because it did not include the claimant's anxiety or depression, both of which the ALJ found to be severe impairments limiting the claimant's ability to work).

This case should be remanded because the Court cannot determine whether the ALJ's decision that Plaintiff could perform other jobs existing in the national economy based on the VE's testimony is supported by substantial evidence.  As previously explained, the hypothetical questions posed to the VE, which the ALJ relied on in making his decision, may not have adequately accounted for all of Plaintiff's mental limitations especially in the area of social functioning.  The ALJ's hypothetical questions to the VE regarding Plaintiff's mental limitations limited Plaintiff to non-complex job duties, which were simple, routine, and repetitive in nature, "embraced by the unskilled and lower end semi-skilled occupational base."  (Tr. 63.)  These hypothetical questions do not seem to account for any social functioning limitations (and if they do, it is certainly unclear to the Court).  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011) (finding that an ALJ's hypothetical to a VE, which limited the claimant to simple, routine tasks or unskilled work, did not properly account for the ALJ's finding that the

26

claimant had a moderate limitation in maintaining CPP); *Berry v. Astrue*, No. 3:09-cv-885-J-TEM, 2011 WL 1135091, at *8 (M.D. Fla. Mar. 28, 2011) (finding the need to avoid unusual stress and sedentary work did not adequately address the claimant's moderate difficulties in social functioning, which resulted from severe affective disorder). Of particular import, it is unclear whether the ALJ found Plaintiff moderately limited in social functioning or CPP, especially given the previously mentioned differing PRTFs and Dr. Hamlin's mental RFC assessment, which opined that Plaintiff had the capacity to "appropriately interact with others in a *structured* setting", and Plaintiff had "adequate attention/concentration to sustain focus in completing *selected* SRT's [simple, routine tasks]." (Tr. 518) (emphasis added). The ALJ merely stated generally that the State agency opinions were given "some weight," without addressing specifically which opinions he was referring to, and more importantly, what if any mental limitations Plaintiff had given the ALJ's finding that Plaintiff's affective/mood disorder was severe. (Tr. 21, 27.)

Simply stated, the ALJ failed to make findings sufficient for the Court to ascertain whether the mental limitations to simple, routine, and repetitive work on the unskilled and lower end semi-skilled level, as stated in the RFC and hypothetical questions, adequately encompassed Plaintiff's severe mental impairment. Because the ALJ posed hypothetical questions to the VE that may have failed to include all of Plaintiff's impairments, the VE's testimony is not substantial evidence and cannot support the ALJ's decision that Plaintiff could perform other jobs existing in the national economy. As such, this case should be remanded. On remand, the ALJ must pose a hypothetical question to the VE that specifically accounts for Plaintiff's limitations

in social functioning (or any other area of mental functioning) if the ALJ finds such areas are in fact limited.

**IV.**

Accordingly, after due consideration and for the foregoing reasons, it is hereby RECOMMENDED that:

1.  The decision of the Commissioner be REVERSED and the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with the recommendations set forth above.

2.  The Clerk be directed to enter judgment for Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 12th day of August, 2013.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date it is served on the parties shall bar

an aggrieved party from a *de novo* determination by the District Court of issues covered in the

report, and shall bar the party from attacking on appeal factual findings in the report accepted or

adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.

28 U.S.C. § 636(b)(1)(c); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)

(en banc).


Copies furnished to:

Hon. James D. Whittemore
Counsel of Record